## NEW YORK OYER AND TERMINER.

### The People agt. Phillip Collins.

A *coroner* can only *examine a prisoner* in the same manner that a justice of the peace would in a like case, and is not authorised to examine witnesses either *against the prisoner or for him*, when he is apprehended by virtue of process issued subsequent to the finding of the inquisition by the jury, or is in custody of the coroner without process at the time the same is found.

That is, the coroner has no power to take testimony to establish the *innocence of the prisoner*, and then *discharge* him contrary to the finding of his jury. Therefore the *inquisition*, though taken in the absence of the prisoner, and upon the testimony of witnesses, *he could not cross-examine*, settles the question of his guilt, so far as it concerns the coroner, until the grand jury passes upon the case.

The legislature never intended that the prisoner should be confronted with the *people's witnesses, before the coroner*, nor that he should have the privilege of *there* producing *witnesses in his own behalf*.

The courts possess the power to *let to bail for murder*, even after indictment; but they never exercise it, unless after a trial and a disagreement of the jury, or in some other manner there appears to be great doubt of a conviction ever being obtained.

The prisoner in this case, having been legally committed to jail for the crime of *murder*, by a regular inquisition of a coroner's jury, and it appearing that there was probable cause for charging him with such offence, *held* that he should *not be let to bail*, but should be remanded to prison, there to await the action of the grand jury.

*New York Oyer and Terminer, Dec. 17, 1860.*

Balcom, *Justice, presiding.*

Habeas Corpus, to inquire as to the cause of the detention of Phillip Collins in the city prison of the city of New York. The warden of the prison brought the prisoner into court in obedience to the commands of the *habeas corpus;* and returned that he held and detained the prisoner by virtue of a commitment, (setting forth a copy of it,) issued by William Schirmer, coroner of said city, dated the 11th day of December, 1860. The commitment recited that Collins was charged before the coroner, on the finding of a coroner's jury, with having, on the 8th day of December, 1860, at the city of New York, caused the death of Henry Binatus, by striking him on the head with a club. The proceedings before the coroner were brought up by *certiorari·*

It appeared that the coroner summoned a jury according to law; examined witnesses before them, whose evidence tended to show that the prisoner was guilty of murdering the deceased. The jury inspected the body of the deceased, and delivered to the coroner their inquisition in writing, signed by them, in which they certified and found that the deceased came to his death by compression of the brain, "the result of a blow of a club, or some blunt instrument," in the hands of the prisoner. It did not appear that the coroner issued any process for the apprehension of the prisoner. But it *did* appear that he was in the custody of the coroner, and the following certificate was among the papers brought up by the *certiorari*, viz:

" Coroner's Office, } ss:
*City and county of New York,* }

Phillip Collins being duly examined before the undersigned, according to law, on the annexed charge; and being informed that he was at liberty to answer or not, all or any questions put to him, states as follows, viz:

*Ques.*—What is your name ? *Ans.*—Phillip Collins.

*Ques.*—How old are you ? *Ans.*—Forty-four years.

*Ques.*—Where were you born ? *Ans.*—Ireland.

*Ques.*—Where do you live ? *Ans.*—No. 11 Albany.

*Ques.*—What is your occupation ? *Ans.*—I keep a liquor and grocery store.

*Ques.*—Have you anything to say, and if so, what, relative to the charge here preferred against you ? *Ans.*—I am innocent in every respect.

his
PHILLIP + COLLINS.
mark.

Taken December 11, 1860.

     William Schirmer, Coroner."

The prisoner asked to be discharged from imprisonment on the ground that the mittimus was defective, and that no witnesses were examined against him before the coroner, after the finding of the inquisition by the jury, so he could

cross-examine them; and because he had no opportunity to produce witnesses on his part; and if the court should refuse to discharge him, he asked that the case be investigated before the oyer and terminer, or some officer to be designated by the court, and that the people's witnesses be produced and examined on oath against him, in his presence, and that he be permitted to cross-examine them, and produce witnesses on his part to show his innocence; and should this request be denied him, he asked to be let to bail; and insisted that the evidence taken before the coroner's jury did not show he was guilty of any crime, unless it was manslaughter in the fourth degree.

> CHARLES S. SPENCER and JAMES M. SMITH, *counsel for the prisoner.*
>
> JOHN H. ANTHON, *Assistant District Attorney, for the People.*

By the court, BALCOM, Justice. A coroner's jury, upon the inspection of the body of the person dead or wounded, and after hearing the testimony, must find and certify in their inquisition how and in what manner, and when and where, the person so dead or wounded came to his death or was wounded, as the case may be, and who such person was, and all the circumstances attending such death or wounding, and who were guilty thereof, either as principal or accessory, and in what manner. (3 *R. S.,* 5*th* ed., *p.* 1036, § 5.) If the jury find that any murder, manslaughter, or assault has been committed, the coroner is required to bind over the witnesses to appear and testify at the next criminal court, at which an indictment for such offence can be found, that shall be held in the county; and if the party charged with any such offence *be not in custody,* the coroner has power to issue process for his apprehension in the same manner as justices of the peace. (*Id.* 1037, § 6.) The coroner, issuing such process, shall have the same power to examine *the defendant* as is possessed by a justice of the

peace, and shall in all respects proceed in like manner. (*Id.* § 7,)

There is no statute that directs the coroner to take the testimony of the witnesses in the presence of the party accused, who are examined before the jury; or that requires him to examine any witnesses to establish the guilt of such party, when brought before him by virtue of process issued after the finding of the inquisition; or that permits such party to produce witnesses before the coroner to show himself innocent of the crime charged upon him. It is, however, the duty of the coroner to present before the jury all the material testimony within his power, touching the death or wounding, as to the manner whereof the jury are to certify, and that which makes for as well as against the party accused. (*See Hale's Pleas of the Crown, Phil. Ed.*, 1847, *with notes by Stokes & Ingersoll, vol.* 1, *p.* 415, *vol.* 2, *p.* 60 *and* 61.)

I think the coroner issues process "in the same manner as justices of the peace," when it is directed to the same officers, signed by him, returnable before him, and in the same form that the processes of such justices are in like cases; and when he examines the defendant, he "proceeds in all respects in like manner as a justice of the peace," if he conducts the examination in the same way a justice takes examinations in similar cases. When he has done these things his whole duty is performed so far as it relates to the apprehension of the accused, and his examination in regard to the offence charged.

The coroner is only required to return to the next criminal court of record, that shall be held in the county, the testimony of all witnesses examined *before the jury*, together with the inquisition of the jury, and all recognizances and examinations taken by him. (*Id.* § 8.) He is not directed to return any testimony taken before him subsequent to the finding of the inquisition; for the reason that there is no law requiring him to take any.

When a person is brought before a justice of the peace upon criminal process, the justice must examine the complainant, and the witnesses produced in support of the prosecution, on oath, in the presence of the prisoner, in regard to the offence charged. (3 *R. S.*, 5*th ed.*, 995, § 13.) And after the examination of the prisoner is completed, in the manner prescribed by statute, his witnesses, if he have any, shall be sworn and examined, and he may have the assistance of counsel in such examination. (*Id.* § 17.)

The examination of the prisoner, before the justice, is a very different thing from the examination of the witnesses there, either against him or in his behalf. Specific provisions are made for doing both. But, as I read the statutes defining the duties of the coroner, he can only examine *the prisoner* in the same manner that a justice of the peace would in a like case, and is not authorized to examine witnesses either against the prisoner or for him, when he is apprehended by virtue of process issued subsequent to the finding of the inquisition by the jury, or is in custody of the coroner without process at the time the same is found. He issues his process for the apprehension of the accused, when not in custody, solely upon the inquisition, and also his mittimus for sending him to prison to await the action of the grand jury. (1 *Chitty's Cr. Law*, 4*th Am. from* 2*d London ed.*, 164; *Hale's Pleas of the Crown*, ed. above cited, *vol.* 2, *p.* 63.) He has no power to take testimony to establish the innocence of the prisoner, and then discharge him contrary to the finding of his jury. I think the inquisition, though taken in the absence of the prisoner, and upon the testimony of witnesses he could not cross-examine, settles the question of his guilt, at least so far as it concerns the coroner, until the grand jury passes upon the case. It justifies the commitment of the prisoner to jail in the same manner that the testimony of witnesses does taken before a justice of the peace. (*Chitty's Cr. Law*, 4*th Am. from* 2*d London ed.*, 164.) He has the privilege of telling

his own story before the coroner, which is to be returned with the inquisition, and that is all. He cannot be discharged on it, howsoever plausible it may be; and the legislature has not secured him the privilege of proving it true before the coroner or the grand jury. It seems to me if the legislature had intended that the prisoner should be confronted with the people's witnesses, before the coroner, or that he should have the privilege of *there* producing witnesses, in his own behalf, they would have so declared in unequivocal language. For such proceedings before the coroner are not recognized by the common law.

In England, " a defendant may be prosecuted for murder by coroner's inquest, *super visum corporis.* The finding of such inquest [there] is equivalent to the finding of a grand jury, and a woman tried on a coroner's inquest for the murder of her bastard child, may be found guilty under 43 *George III., ch.* 58, § 4, of endeavoring to conceal its birth; there being no distinction in this respect between the coroner's inquisition and a bill of indictment returned by the grand jury." (1 *Chitty's Cr. Law, 4th Am. from 2d London ed.,* 157; *id.* 162 *and* 164.) And "in cases of murder or manslaughter, where, besides the indictment, there is also a coroner's inquisition, it is usual to arraign the prisoner on the inquisition immediately after arraigning him on the indictment, and to try him on both at the same time." (*Archbold's Cr. Pl., Waterman's ed., vol.* 1, *p.* 108; *East's Pleas of the Crown,* London *ed.,* 1803, *vol.* 1, *p.* 371.)

In this country no person can be tried upon a coroner's inquisition, yet the inquisition of a coroner's jury, finding a person guilty of murder, has about the same force against him, until the grand jury passes upon his case that an indictment found by them has thereafter prior to his trial. There is, however, this difference between the effect of the two in England and also in this country : " the finding of a grand jury is regarded as of more weight than an inquisition taken before the coroner, as the court will, in their dis-

cretion, bail after the latter, but always refuse after the former; the reason of which may be, that in the one case they can look into the depositions to see if the evidence supports the charge of murder, whereas in the other, the investigation is secret and does not admit of a summary revision." (1 *Chitty's Cr. Law, ed. above cited, p.* 164.)

The courts possess the power to let to bail for murder even after indictment, but they never exercise it, unless after a trial and a disagreement of the jury, or in some other manner there appears to be great doubt of a conviction ever being obtained.

The prisoner's counsel has said that it is a great hardship for a person to be imprisoned for months, by reason of the inquisition of a coroner's jury, when, if permitted, he could establish his innocence before that officer; and so it is; but it is no greater hardship than it is for an innocent person, who is indicted by the grand jury for murder, to lie in jail until he can be tried in the oyer and terminer, when, if allowed the privilege, he could have shown his innocence by cross-examining the people's witnesses before the grand jury, or by *there* producing testimony in his own behalf. The answer to all this is, that the law does not confer such privileges upon a person charged with homicide, and the courts must enforce it as they find it.

The proceedings in this case before the coroner, the inquisition of the jury, and the commitment of the prisoner by the coroner, were regular, and the inquisition is sustained by the evidence returned therewith. This being the case, the prisoner should not be discharged, or have the case investigated again before it is passed upon by the grand jury.

The mittimus is not void for the omission of the allegation that the prisoner " feloniously" caused the death of Binatus, because the fact that he " feloniously" caused it may be collected on the face thereof. (*Barb. Cr. Law,* 2d *ed.,* 571.)

But if the commitment were irregular, the prisoner could not be discharged, for the reason that the testimony taken before the coroner's jury shows that Henry Binatus came to his death in the city of New York, on the 8th day of December, 1860, by compression of the brain, "the result of a blow of a club, or some blunt instrument," and that there is probable cause to charge the prisoner with unlawfully inflicting such blow. Such being the facts, it would be the duty of the court, if the commitment were irregular, to let the prisoner to bail, if the case were bailable, and good bail were offered; or if not, forthwith to remand him. (3 *R. S.*, *5th Ed.*, 888, § 58.)

The prisoner having been legally committed to jail, for the crime of murder, and it appearing there is probable cause for charging him with such offence, he should not be let to bail; but should be remanded to prison, there to await the action of the grand jury.

Decision accordingly.